## CITY OF BANGOR *vs.* INHABITANTS OF FRANKFORT.

'Penobscot.   Opinion November 15, 1892.

*Pauper.   Divorce.   R. S., c. 20, § 3.*

A ruling that the divorce of a pauper's wife and her marriage with another man while her husband was in prison in another State did not work an abandonment on his part of his residence, affords the city in which he resided when he went away no cause for exceptions.

ON EXCEPTIONS.

This was an action for pauper supplies, furnished one Abiatha Grant, amounting to $123.87.   The case was tried by the court without a jury.

It was admitted that seasonable notices and denials were given, and that Abiatha took a settlement derived from his father in Frankfort, and after his majority, moved to Bangor and acquired a domicil there in 1871.

The court found that the pauper, having a family and domicil in Bangor in 1872, shipped as a seaman on a voyage to Boston, with the intention of returning to his family, but while there was convicted of crime and sentenced to the Massachusetts state prison for the term of fifteen years, from which he was released after eleven years' imprisonment and returned to Bangor in March, 1884, and since that time had not acquired a pauper settlement in any place by continuous residence of five years.

The court found that, during the pauper's absence in Massachusetts, pauper supplies were furnished his family by Bangor during the years 1873, 1875 and 1876, that in 1876 his wife became divorced from him, and in 1877 married another man and that thereafterwards, until his return to Bangor in 1884, he had no wife or children resident there.

The court found that the pauper had a domicil in Bangor from 1872 to March, 1884, unless the divorce of his wife and her subsequent marriage worked an abandoment of it in 1876 and 1877, whereby his residence then became lost and prevented his gaining a pauper settlement in Bangor by five years' continuous residence thereafterwards during the time that he was imprisoned in Massachusetts.

The court ruled as matter of law, that the pauper's domicil in Bangor at the time of his wife's divorce and subsequent marriage, in 1876 and 1877, was not thereby destroyed; but continued until his return to Bangor in 1884, more than five consecutive years, whereby he gained a pauper settlement in Bangor, and ordered judgment for the defendant. To this ruling the plaintiff excepted.

*H. L. Mitchell*, City Solicitor, for plaintiff.

As it was admitted by the defendant town that the pauper had his derivative settlement in the town of Frankfort, the burden of proof at once shifted from the plaintiff to the defendant to establish his settlement in Bangor. *Hampden* v. *Levant*, 59 Maine, 558. No evidence introduced into the case to show what this man's intentions were or what he did in 1872 up to and including 1884; and defendant failed to come within the rules laid down by the courts and establish the fact that the pauper ever had any intention of continuing his home in the city of Bangor after he committed this felony and was arrested and committed therefor. *North Yarmouth* v. *West Gardiner*, 58 Maine, 221; *Fayette* v. *Livermore*, 62 Maine, 232; *Detroit* v. *Palmyra*, 72 Maine, 258. Presumption: *Greenfield* v. *Camden*, 74 Maine, 65; *Belmont* v. *Vinalhaven*, 82 Maine, 531. Counsel also cited: *Reading* v. *Westport*, 19 Conn. 564; *Washington* v. *Kent*, 38 Conn. 249; *Northfield* v. *Vershire*, 33 Vt. 115.

*Vose and McLellan*, for defendant.

VIRGIN, J. Assumpsit for pauper supplies. The pauper had a derivative settlement in Frankfort, which continued there, unless he acquired another. R. S., c. 20, § 3.

The main question before the presiding justice who tried the case without the aid of the jury — was — whether the pauper acquired a settlement in Bangor by having "his home therein five successive years" between 1877 and 1884 when he was released from his eleven years' imprisonment in Massachusetts, whither he went for a temporary purpose with the intention of returning to his family.

The presiding justice found that, the pauper continued to have his residence or home in Bangor, during his imprisonment, unless the divorce of his wife in 1876 and her marriage to another man in 1877, "worked an abandonment of it, whereby his residence then became lost and prevented his gaining a settlement in Bangor by his five years' subsequent continuous residence there during the time of his imprisonment."

He must have found, therefore, as a matter of fact, that during his entire term of imprisonment, he had at least a latent intention to return to Bangor when discharged. *Detroit* v. *Palmyra*, 62 Maine, 258. The fact that he did so return is evidence of such intention to be weighed by the judge in connection with the other evidence before him. *Richmond* v. *Vassalborough*, 5 Maine, 396, 400.

But while her divorce and subsequent marriage obviously established an abandonment, on her part, of the pauper's residence in Bangor, they did not necessarily *per se* interrupt his. *Greene* v. *Windham*, 13 Maine, 225. The power of changing the husband's residence, against his will, does not belong to the wife—public policy forbids it. *Richmond* v. *Vassalborough*, 5 Maine, 398. Otherwise a married woman could disfranchise her husband. His home, however, is in the town where he supports and maintains his wife, even if he actually lives in another where he transacts his business. *Opinion of the Justices*, 7 Maine, 497.

We think, therefore, that the ruling that the pauper's residence or home was not thereby destroyed, was proper. For there might have been various other evidence which led the judge to the conclusion that the mere imprisonment alone did not interrupt the continuity of his residence in Bangor. *Topsham* v. *Lewiston*, 74 Maine, 237. And in the absence of any report of the evidence his finding of facts cannot be reviewed.

*Exceptions overruled.*

LIBBEY, EMERY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.